IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-607 |
| v. | ) ) | Magistrate Judge Caiazza |
| LYLE & SCOTT LIMITED, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

The parties have briefed the Defendants' assertion of attorney-client privilege regarding the handwritten notes and deposition testimony of Dennis Hall, and the court will rule in favor of the Plaintiffs.

At the onset, the undersigned notes that AE has not observed the spirit and intent of the court's September 6, 2007 text Order, directing the parties to file cross briefs. The Plaintiffs filed their brief one day late, *see* Doc. 64, and it specifically addresses portions of the Defendants' timely-filed brief. *See, e.g., id.* at 6. In the interest of fairness, the court will consider only the operative facts stated in the Plaintiffs' brief, which have not changed based on counsel's review of the Defendants' submission.

Turning to the merits, the court is not convinced that L&S has established attorney-client protection regarding Mr. Harris' notes. Counsel cites cases for the unremarkable proposition that a client's handwritten notes, taken during a meeting with his lawyer, falls within the scope of attorney-client privilege. *See* Defs.' Br. (Doc. 61) at 3 (citations omitted). This is not a situation

where the client drafted notes during his meeting with counsel and they were later inadvertently produced.  Rather, this is a case where a key witness took notes during settlement negotiations with an adverse party, he stated mental impressions regarding the strengths and weaknesses of his company's position, and then later, through the questioning of opposing counsel, it was revealed that some, though not all, of his mental impressions may have been influenced by prior advice of counsel.  *See generally* Harris Notes and Dep. Tr.

The Defendants' invocation of attorney-client protection is tenuous and, if legal precedent supports its extension to the instant scenario, counsel have failed to identify it.  *See generally* discussion *supra*; *cf. also* In re New Motor Vehicles Canadian Export Antitrust Litig., 2007 WL 1668634, *1 (Me. Jun. 5, 2007) (highlighting that "[a]ttorney client privilege protects communications between lawyer and client," and declining to extend protection to meeting notes not reflecting such communications) (citations and emphasis in original omitted).  The court has concerns, moreover, that extending the privilege to meeting notes not reflecting attorney-client communications on their face or through the powers of reasoned deduction may encourage abuses under comparable circumstances.[1]  For all of these reasons, the Defendants have failed to establish the application of attorney-client privilege.

---

[1] It is not hard to imagine a party seeking to shield from production potentially damaging meeting notes of any nature by simply claiming they were informed by the prior advice of counsel.  Absent some reasonable indicia that this indeed was the case, the Defendants' approach would constrain the court to accept the assertion of attorney-client privilege.  While L&S may disagree whether reasonable indicia are lacking here, the court's review of Mr. Harris' notes in their entirety leads the undersigned to reach a different conclusion.  *See* discussion *infra* (noting portions of Mr. Harris' deposition testimony indicating that personal beliefs informed his opinions regarding strengths and weaknesses of L&S's position).  This is not to suggest that the court questions the veracity of Mr. Harris' testimony; rather, it finds insufficient evidence that the notes in question reflected communications between a client and his attorney.

Even assuming the contrary, L&S has waived any protection under the doctrine. Although Defense counsel relies on the four-factor test in Minatronics Corp. v. Buchanan Ingersoll, P.C., 23 Pa. D. & C.4th 1 (Pa. Comm. Pl. 1995), *see* Defs.' Br. at 4, the Pennsylvania Superior Court's recent decision in Carbis Walker, LLP v. Hill, Barth & King, LLC, -- A.2d --, 2007 WL 2080599 (Pa. Super. Jul. 23, 2007) endorses different standards.[2]  Because the Superior Court's decision offers a better prediction of how the Pennsylvania Supreme Court would rule, the undersigned will follow Carbis Walker.  *See generally* Edwards v. HOVENSA, LLC, -- F.3d --, 2007 WL 2200473, *5 (3d Cir. Aug. 2, 2007) (endorsing same approach) (citations omitted).

In deciding whether there has been a waiver, the court considers:  (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors.  Carbis Walker at *7 (citation omitted).

The first factor supports a waiver.  Defense counsel had the opportunity to review Mr. Hall's notes in advance of his deposition, and was charged with the responsibility of preparing the witness' defense of the same.  Under the circumstances, the Defendants knew or

---

[2]  The four-part test in Minatronics considered whether:  (1) the disclosure was inadvertent, (2) it is still possible to afford the party that produced the documents many of the protections provided by the attorney-client privilege, (3) counsel took reasonable steps after learning of the inadvertent production, and (4) the party receiving the documents will not be prejudiced by a court order prohibiting or restricting that party's use of the documents. *Id.* at *14.  The Superior Court rejected this and similar approaches because they failed to account for the "quite logical . . . consider[ation of] the reasonableness of . . . precautions taken to avoid [inadvertent] disclosure."  See Carbis Walker, 2007 WL 2080599 at *7 (footnote omitted).

should have known of the purportedly protected information in Mr. Hall's notes. It was only through Plaintiff counsel's questioning that the privilege issue was unearthed and, although the Defendants asserted attorney-client privilege in the deposition regarding Mr. Hall's post-meeting discussions with lawyer(s), trial counsel did not object to the witness' reading his notes into the record, nor was an assertion of privilege made before the close of the deposition. *See* Dep. Tr. of D. Hall (filed under seal) at 237-242.

Given the thin basis for asserting privilege in the first place, Defense counsel cannot be greatly criticized for failing to take precautionary or immediate protective measures in connection with the disclosure. To the extent L&S now relies on the attorney-client privilege, however, the duty to take reasonable precautions supports a finding of waiver.

As to the number and extent of inadvertent disclosures, Plaintiffs' counsel highlights that the Defendants produced unredacted copies of Mr. Hall's notes not once, but twice. *See* Pls.' Br. at 2-3. As referenced above, moreover, the Defendants allowed Mr. Hall to read his notes into the record, counsel did not intervene during the deposition when the purportedly protected information was revealed, and the Defendants did not assert attorney-client privilege until twelve days thereafter. *Id.* at 3. Thus factors (2) and (3), as well as (4),[3] support a waiver.

Finally, the interests of justice favor keeping Mr. Hall's notes and testimony in the record. As noted above, the Defendants' assertion of attorney-client privilege is tenuous at best. It only came about through the questions of Plaintiffs' counsel during the witness' deposition. Indeed, had A&E not asked followup questions regarding the source of Mr. Hall's opinions,

---

[3] *See, e.g.*, Carbis Walker, 2007 WL 2080599 at *7 (affirming trial court's finding of waiver where party asserting privilege "failed to take steps to rectify the disclosure for at least 17 days after it was notified of its occurrence").

the issue likely never would have surfaced.

In addition, there are strong indications that this witness' impressions regarding the strengths and weaknesses of his company's position were informed equally, if not more, by his own experiences rather than through the prior advice of lawyers. *See, e.g.*, Dep. Tr. of D. Hall at 240-41 (testifying that L&S's ability to challenge AE's mark in United States was "far from certain" because "court action . . . is never certain," there were "a number of cost and time issues associated with it," and "I had a specific concern about [L&S] being physically out of the market for a period of years").

In sum, Mr. Hall was the L&S agent responsible for negotiating the alleged settlement agreement between the parties in January 2006. His notes regarding the meeting go straight to the heart of this litigation, they were produced and read into the record without objection, and they reflect his personal beliefs and observations regarding the parties' dispute. To preclude the notes and related testimony based on L&S's assertion of attorney-client privilege would not promote the interests of justice, and the Defendants requests for redaction and striking are hereby DENIED.

IT IS SO ORDERED.

September 26, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Cynthia E. Kernick, Esq.
Kirsten R. Rydstrom, Esq.
Theodore R. Remaklus, Esq.
Susan B. Flohr, Esq.
Timothy D. Pecsenye, Esq.
Dennis P. McCooe, Esq.