**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-607 |
| v. | ) ) | Magistrate Judge Caiazza |
| LYLE & SCOTT LIMITED, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Having considered the parties' submissions on the Defendants' Motion regarding spoliation (Doc. 67), the court will grant the Motion to the extent described below.

At the onset, the undersigned notes that this is not the typical case of alleged spoliation. In connection with settlement negotiations, the Defendants agreed to provide the Plaintiffs certain documents to conduct due diligence ("the Due Diligence Documents") regarding the potential acquisition of L&S by AE. Before the documents were exchanged, the parties entered an agreement under which AE was required to destroy the Due Diligence Documents if it declined to acquire L&S. Once it became clear the acquisition would not go through, the Defendants requested the destruction of the Due Diligence Documents and proof of the same. *See* Defs.' Mot. (Doc. 67) at 5-6.

The Plaintiffs fulfilled their duty under the parties' agreement, but the Defendants have identified one AE agent who went too far in destroying documents. *See id.* at 2 (discussing Christopher Fiore's destruction of all L&S-related documents). On this basis, L&S seeks

a scorched-earth investigation regarding the twenty-three recipients of the purge order to determine whether they also went overboard in following the instructions.

The equities presented in this situation leave both parties with legitimate arguments and concerns. On the one hand, there is clear evidence that one of AE's employees went too far and destroyed materials beyond the Due Diligence documents. On the other hand, AE may rightfully feel it has been "sandbagged" by L&S, given its obligation to destroy documents and the Defendants' subsequent allegations of spoliation.

Although the court is sympathetic to L&S's concerns, the undersigned is determined not to allow the spoliation issue to become an unending "sideshow" that prevents an adjudication of the underlying claims. The question, then, is how to determine whether additional non-Due Diligence documents were destroyed and what consequences should follow.

Consistent with the court's instruction, Plaintiffs' counsel have provided responses to four areas of inquiry presented at the September 4, 2007 conference. *See* text Order dated Sept. 4, 2007. The parties should not read too much into the court's adoption of the questions posed, as they essentially echoed the inquiries as presented by counsel. In any event, the court will address the purported deficiencies in the Plaintiffs' responses.

Question (a): What instructions were given regarding the non-retention of documents that were or have become relevant to this lawsuit?

The Defendants request that AE produce all written instructions issued by Ms. Strohm regarding the destruction of documents. *See* Defs.' Mot. at 2-3. Regardless of whether the court's September 4th Order contemplated such production, the court agrees that it is appropriate.

Accordingly, the Plaintiffs shall produce copies of all written instructions, and any followup clarifications, regarding document destruction.[1]

The Defendants also request the production of any communications made by AE agents regarding the instructions and any confirmation(s) that destruction took place.  Again, this information is relevant and necessary to determining whether other individuals exceeded the scope of the purge instruction.  The Plaintiffs shall produce any such materials, although they may redact any unrelated communications protected by the attorney-client privilege.

Next, the Defendants state "concerns that [the] Plaintiffs are narrowly construing the Court's Order to pertain only to documents destroyed that [the] Plaintiffs deem 'are or have become relevant' to the litigation," and counsel requests that AE "answer Question (a) with regard to any destruction of documents during the pendency of this lawsuit related to [L&S] in any matter."  Defs.' Mot. at 3.  It seems apparent, however, that the parties have a clear understanding of the spoliation issues presented.  Simply put, the question is whether agents of AE exceeded the scope of the required document purge and destroyed materials regarding L&S beyond those provided for Due Diligence.  There now exists no basis for believing that AE destroyed documents relevant to this litigation beyond the context of the Due Diligence

[1]  To the extent AE objects to this and other productions based on the attorney-client privilege, said objection is overruled.  Although the court has no reason to believe that AE has deliberately destroyed documents other than those relating to Due Diligence, an inquiry into what instructions were given and how they were carried out is necessary to determining whether instances of spoliation occurred.  *Cf. generally* <u>Wachtel v. Guardian Life Ins.</u>, 2007 WL 1752036, *2 (D. N.J. Jun. 18, 2007) (court may review attorney communications and work product to assess spoliation of evidence allegations) (citations and internal quotations omitted).  Given AE's implicit recognition that its destruction efforts must be investigated to at least some extent, the court sees no reason why the materials ordered for production herein should be restricted to *in camera* review.  If the Plaintiffs can demonstrate good legal cause why some of the materials should receive such treatment, it may present an oral motion at the conference scheduled below.

agreement, and the Defendants' concerns regarding the Plaintiffs' interpretation of the court

Order appear unfounded.[2]

Finally, the Defendants ask that the thirteen AE lawyers who received purging

instructions submit their own answers to Question (a), state an inventory of what documents were

returned or destroyed, state whether they were involved with the possible purchase of L&S, state

whether or not they received Due Diligence Documents, and supply copies of all

communications with Ms. Strohm (or anyone else) relating to the same. *Id.* at 4.  These requests

overlap with much of the other relief sought and, to the extent Defense counsel calls upon

thirteen individual lawyers to become intricately involved in the spoliation investigation, such

efforts would be overbroad and unduly burdensome.

Plaintiffs' trial counsel has acted, and shall continue to act, as the clearinghouse for the

spoliation inquiry.

Question (c):  Who received and/or acted upon the purge instructions?

As noted above, the Plaintiffs have identified twenty-three individuals who received the

instructions.  Defense counsel asks for information regarding the roles these individuals played in

relation to L&S, whether in connection with the company's possible acquisition or otherwise. *Id.*

at 4.  Specifically, the Defendants request that the Plaintiffs be ordered to state the AE

employees' positions from 2006 to present, as well as why each person received the destruction

---

[2]  For the purposes of clarification, the undersigned cannot imagine how AE may be in possession of non-Due Diligence documents regarding L&S that are irrelevant to this litigation. Unless the parties share relationships of which the court is unaware, any documents regarding L&S within AE's possession would almost necessarily bear upon the parties' underlying disputes.  If the Plaintiffs rely on a different view, their counsel should raise the issue at the upcoming conference so the court can evaluate their position.

orders.  As for non-AE employees, they seek the individuals' company or firm name, their

specific relationship with AE, and the reasons why they received the purge instructions.  *Id.*

The undersigned agrees that such information is necessary for L&S and the court to

understand the context within which these individuals received the instructions.  Accordingly,

AE shall provide the requested information.

The Defendants also question why Ms. Strohm is excluded from the list, and they wonder

whether she herself destroyed documents.  *Id.* at 4.  L&S is entitled to know whether this

individual acted upon the purge instruction, and AE should include her in its spoliation

responses.

Question (d):  Which documents, not subject to the Parties Due Diligence agreement, were not retained?

In response to this inquiry, Plaintiffs' counsel states:  "After a full investigation, [the]

Plaintiffs believe that no documents were destroyed except those that were subject to the parties'

[Due Diligence] Agreement."  *See* Pls.' Response to Sept. 4th Order (filed as Ex. 3 to Doc. 75).

Counsel also provides detailed information regarding AE's investigation into Mr. Fiore's

deletion of documents beyond the scope of the purge instructions.  *See id.* ("a review of

Mr. Fiore's computer by an information systems technician has located additional documents

related to the parties' discussions about the co-existence agreement," and they "will be produced

in short order").  In their opposition brief, the Plaintiffs provide greater detail regarding the non-

Due Diligence documents authored or received by Mr. Fiore and demonstrate that they were

preserved in the evidence through the files of the senders or recipients.  *See* Pls.' Opp'n Br.

(Doc. 75) at 6-9.

The court is convinced that Plaintiffs' counsel has made reasonable, good faith efforts to uncover any non-Due Diligence documents deleted by Mr. Fiore. Further investigation would require unduly burdensome efforts, most likely involving the assistance of forensic computer experts. As the record currently stands, the court finds insufficient grounds for demanding such extreme measures.

The court is cognizant that, absent the onerous efforts just mentioned, L&S cannot be absolutely certain that all non-Due Diligence documents in the possession of Mr. Fiore (or any other agent of AE) have been uncovered. While this is unfortunate, the court again must view the spoliation allegations in the greater context. It was the parties' agreement and joint efforts that led to the need for document destruction, and to allow the Defendants unfettered discretion in their demands for further investigation is unfair to the Plaintiffs and unjustified by the current record. This is particularly true given the lack of evidence that AE or its agents made deliberate efforts to destroy evidence relevant to the underlying claims and defenses in this case.

This is not to say, however, that the court or the Defendants should be satisfied with the Plaintiffs' stated belief that no other AE agents exceeded the scope of the presumably appropriate purge instructions.[3] Rather, AE will be called upon to provide an explanation of the investigation taken to confirm its conclusion.

As noted above, twenty-three individuals received purge instructions in connection with the Due Diligence project. Plaintiffs' counsel must make some showing that none of these individuals went the way of Mr. Fiore and exceeded the scope of the legitimate purge.

---

[3]  Many of the conclusions above rely on Plaintiff counsel's representation that AE agents were instructed "all documents relevant to this lawsuit [we]re to be retained." *See* Pls.' Response to Question (a) of Sept. 4th Order. If AE's evidence does not confirm this assertion, the court's view of the spoliation issues may be altogether different.

Defense counsel's suggestion that all of these individuals be deposed exceeds the bounds of reasonableness, as does its request that each be required to list and describe all documents destroyed. *See* Defs.' Br. at 7. The court must presume that the Due Diligence documents are a quantified and determinable set, and distinguishing them from other documents relating to the parties' underlying claims and defenses should not be a matter of discretion. Requiring each individual to identify the Due Diligence documents they destroyed would be a difficult and time consuming task, and the probative value of this information will not outweigh the burden of producing it.

What really matters is whether non-Due Diligence materials regarding L&S were destroyed through the purge. While sworn affidavits of the individuals would suffice and are encouraged, the court is mindful that requiring them of all may prove too great a challenge given the time constraints in this case. At a minimum, Plaintiffs' counsel must be prepared to demonstrate that reasonable efforts were taken to investigate the non-affiants' compliance with the purge instructions and to confirm that non-Due Diligence documents were preserved.

To the extent that further inappropriate destruction is uncovered, the Plaintiffs are required to conduct an investigation, like the one undertaken in connection with Mr. Fiore, regarding whether the materials otherwise have been preserved. If other non-privileged documents are identified, they must be produced.[4]

---

[4] As is the case with Mr. Fiore, the court's rulings will require L&S to place in Plaintiffs' counsel some degree of faith and trust regarding their ethical responsibilities to produce any non-privileged materials discovered. This same is true in any case, though, and despite L&S's possible beliefs to the contrary, the court's neutral and objective review does not cause it to question the good faith of AE or its counsel. As long as there have been shredding machines, there have been opportunities for discovery abuses, and the court sees nothing here to distinguish this case from the others that have been ethically litigated before it.

In conclusion, the court currently is left with the impression that the Plaintiffs' responses to the spoliation allegations have been on the "up-and-up." The Defendants do have the right, however, to a better explanation regarding how AE's conclusions have been reached.

The court recognizes that the tasks put before the Plaintiffs will take some time to complete. How they should fit into the current case management schedule is a matter that warrants further consideration.

L&S has maintained that the spoliation issues must be resolved before it can adequately prepare for certain of the Plaintiffs' Rule 30(b)(6) deponents. While the court is not entirely convinced, it believes the parties should be heard on the matter.

The undersigned also is concerned that requiring AE to conduct its spoliation investigation while at the same time pursuing other discovery efforts will place too great a burden on the Plaintiffs. Whether the spoliation inquiry precedes or follows the remaining discovery, the court suspects that undertaking them contemporaneously will prove too much.

Superimposed upon these considerations is the court's lingering belief that this case is ripe for serious settlement negotiations. Headway was made at the last conference, but the talks fell apart because AE did not secure the attendance of person(s) with sufficient settlement authority.

The parties have seemed close to an amicable resolution on multiple occasions, and the court must share its view that the case begs for settlement. The discovery efforts in this action have become all-consuming, and the corresponding effort and expense must be questioned given the progress previously made.

Accordingly, the court will call another conference to discuss the potential settlement of this case. The parties shall ensure the attendance of person(s) with absolute and final settlement

authority, and the court will reserve the entire day for discussions.  If the case cannot be amicably resolved, the undersigned will set a case management schedule that accounts for the spoliation investigation and all remaining discovery.

In the meantime, the parties should make best efforts to move forward with discovery to the greatest extent possible.  Although the court envisions granting a modest extension of the discovery deadline given the looming spoliation issues, counsel are instructed to make best use of their time in the interim.

For all of the reasons stated above, the court's rulings on spoliation are hereby entered, and the parties shall appear in chambers for the above-described conference on Tuesday, October 9, 2007 at 9:30 a.m.

THESE THINGS ARE SO ORDERED.


September 27, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Cynthia E. Kernick, Esq.
Kirsten R. Rydstrom, Esq.
Theodore R. Remaklus, Esq.
Susan B. Flohr, Esq.
Timothy D. Pecsenye, Esq.
Dennis P. McCooe, Esq.