IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMERICAN EAGLE OUTFITTERS, INC. and  )
RETAIL ROYALTY COMPANY,               )
                                      )
            Plaintiffs,               )
                                      )
    vs.                               )        Case No. 2:06-cv-00607-ARH
                                      )
LYLE & SCOTT LIMITED and HARRIS       )
WATSON INVESTMENT LIMITED,            )
                                      )
            Defendants.               )

<u>MEMORANDUM OPINION</u>

HAY, Chief Magistrate Judge

Following this Court's grant of summary judgment (Doc. 249) in favor of American

Eagle Outfitters, Inc. and Retail Royalty Co. (collectively "AE" or "the Plaintiffs") on a contract

claim made against Lyle & Scott Limited and Harris Watson Investment Limited (collectively

"L&S" or "the Defendants"), AE filed the pending Motion (Doc. 250) seeking an award of

$2,600,000 in attorneys' fees and expenses.[1]  Asserting its status as a prevailing party, AE

contends that this case should be deemed "exceptional" within the meaning of the Lanham Act

("the Act"), 15 U.S.C. §1117(a), entitling it to a fee award.  In the alternative, AE argues that it is

entitled to attorneys' fees and costs under the provisions of Fed. R. Civ. P. 11, or pursuant to this

Court's inherent equitable power to award attorneys' fees to a prevailing party where its

---

[1] An Opinion addressing the Court's Order was issued by the Court of Appeals for the Third Circuit on September 11, 2009. <u>See</u> <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, No. 08- 4807, 2009 WL 2902250 (3d Cir. Sept. 11, 2009) (finding that parties entered into valid and enforceable contract, but ordering remand for trial on two ambiguous contract provisions).

opponent has acted in bad faith.  The Motion will be denied.

I.       BACKGROUND

Because the facts of this matter are well known to the parties and are recounted in the Opinion addressing the Plaintiffs' Motion for Summary Judgment, the Court sketches only those facts necessary to provide context for its disposition of the pending Motion.

The seeds of this litigation were sown in a September 2005 letter from the Managing Director of L&S to AE's CEO stating that L&S had learned that AE was marketing clothing bearing an eagle logo that was "so close to [the L&S] registered marks that there is a substantial risk of confusion as to the origin of your goods when offered for sale in Europe . . .  [W]e would undoubtedly succeed in infringement proceedings against you."  (Doc. 223 at 37).  Negotiations between the parties' representatives began soon thereafter, and culminated in a January 2006 London meeting at which, according to AE, a binding coexistence agreement was reached, thereby eliminating the threat of trademark-related litigation.

 When L&S later denied that there had been an agreement and demanded royalty payments in return for AE's unimpeded use of the eagle mark, AE filed suit seeking declaratory judgment as to the existence of an enforceable coexistence agreement and specific performance thereof.  It also sought a declaratory judgment that AE had not infringed L&S's Eagle Design Trademark.  (Doc. 1).   In September 2006, AE amended its Complaint (Doc. 26) to include a claim for tortious interference  -  which was later dismissed  -  against the owners of L&S and its parent company.  L&S answered the Amended Complaint on May 10, 2007, filing two trademark-related counterclaims.  (Doc. 45).  In November 2007, AE filed a Second Amended Complaint (Doc. 99) adding two trademark related counts.  One year later, this Court granted

summary judgment in favor of AE on its contract claims, obviating the need to reach the trademark issues.

The Court discusses seriatim the issues raised in AE's Motion.

II.      DISCUSSION

A.   The Fee Shifting Provision of the Lanham Act [2]

1.   AE's Status as a Prevailing Party

AE contends first that because it prevailed on its Motion for Summary Judgment, it is entitled to an award of attorneys' fees under the Lanham Act.  In framing their arguments on this issue, the parties ignore a threshold question - whether the fee shifting provision of the Lanham Act applies at all.  Although the parties and the Court have termed this matter a "trademark dispute," the grant of summary judgment focused only on state law issues of contract formation unrelated to the Lanham Act, except in a "but for" sense.  That is to say, but for the threat that L&S would sue for trademark infringement, there would have been no need to negotiate an agreement.  Given the Court's disposition of the contract claim, the Court was not required to

---

[2]This provision, codified at 15 U.S.C. § 1117, reads in pertinent part:

(a) Profits; damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

reach, did not consider, and cannot, on the record before it, assess the merits of the Lanham Act claims.

AE attempts to force the contract dispute into the confines of the Lanham Act by arguing that the contract matter "was transformed into a Lanham Act trademark based action" when L&S "disavow[ed] the coexistence agreement and threaten[ed] to assert trademark infringement." (Doc. 258 at 2).  AE's discussion of its status as a prevailing party on trademark based claims is brief and conclusory:

> The principal thrust of discovery and legal work in this action was [AE]'s declaratory judgment for non-infringement and the counterclaim by L&S for trademark infringement. Thus the attorney's fees and costs incurred by [AE] were directed to the Lanham Act claims (including the complete bar to those claims provided by the coexistence agreement), as were all expert opinions.

(Doc. 258 at 6).   This argument ignores the fact that the Court's consideration of the contract dispute on summary judgment had nothing to do with the merits of the trademark claims.  The Court of Appeals recognized as much when it reviewed the grant of summary judgment, correctly terming the matter "a contract case."  Am. Eagle Outfitters,  2009 WL 2902250 at, *1.  In these circumstances, AE cannot be considered a prevailing party under the Lanham Act and, therefore, is not entitled to take advantage of its fee shifting provision.  AE does not cite authority to the contrary.

The Court's conclusion regarding the availability of attorneys' fees under the Act does not rest only on its prevailing party determination; even if it were reasonable to characterize AE as a prevailing party for purposes of the Lanham Act,  the Court finds that this case does not meet the Act's exceptionality requirement.

2.      The Contours of an "Exceptional" Case Under The Lanham Act

a. The Analytical Framework

The Lanham Act does not define the term "exceptional."  Case law establishes that "[d]etermining whether a case is exceptional is a two-step process."  Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007).  The first requires a showing based on clear and convincing evidence that the losing party engaged in culpable conduct.  Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991).  See also Callaway Golf Co. v. Slazenger,  384 F.Supp.2d 735, 747 (D. Del. 2005).  Absent this showing, the exceptionality inquiry ends. Where culpable conduct is established,  the Court must next determine whether all of the surrounding circumstances are exceptional enough to warrant a fee award.  The Court of Appeals summarized the operative analysis as follows: " [A] district court may not award fees without a finding of culpable conduct, but it may decline to award them despite a finding of culpable conduct based on the totality of the circumstances."  Green, 486 F.3d at 103-04.  The decision with respect to a fee award is committed to the discretion of the District Court.  Acumed  LLC  v. Adv. Surg. Serv., Inc., 561 F.3d 199, 230 (3d Cir. 2009).

b.      Culpable Conduct

In Securacomm Consulting, Inc. v. Securacomm Inc., 224 F.3d 272 (3d Cir. 2000), the Court of Appeals clarified that the concept of culpable conduct is elastic, "and may vary depending on the circumstances of a particular case."  Id. at 280.  Where the defendant is the prevailing party in a trademark infringement case and seeks fees from the plaintiff, the plaintiff's culpable conduct will necessarily center on the act of filing the lawsuit rather than on the infringement."  Id.  See also Acumed, 561 F.3d at 230.

5

The Court in <u>Securacomm</u> recognized that the language of the Patent Act, 35 U.S.C. § 285, contains a fee provision identical to the one included in the Lanham Act, and observed that courts have looked to cases arising under that Act for guidance in identifying what constitutes culpable conduct.  Decisions construing the Patent Act establish that culpable conduct may include, among other things, misconduct during litigation, vexatious or unjustified litigation, and the frivolous nature of a suit.  <u>Id.</u> at 282.  "Culpable conduct comes in a variety of forms and may vary depending on the circumstances of a particular case."  <u>Id.</u> at 280.

AE bases its contention that L&S engaged in culpable conduct first on L&S's "refus[al] to honor the bar to infringement actions provided by the coexistence agreement."  (Doc. 258 at 7).  "It cannot be questioned that L&S reneged on the agreement and asserted trademark infringement in bad faith."  <u>Id.</u> at 9.  In support of this argument, AE contends that L&S knew in January 2006  -  especially after Dennis Hall's deposition  -  "that the coexistence agreement was enforceable" and exhibited bad faith in contesting the agreement and asserting infringement counterclaims.  <u>Id.</u>  According to AE, "[d]espite foreshadowing of the judgment that would ultimately be entered against it, . . L&S . . . plowed ahead with a litigation strategy wrongfully designed to avoid the merits of [AE]'s declaratory judgment claims for noninfringement and to do so by suppressing the evidence of the coexistence agreement through frivolous assertions of attorney-client privilege, spoliation, and an unfounded accusation of ethical misconduct against a member in good standing of the Pennsylvania Bar."  <u>Id.</u> at 10.[3]

---

[3] AE asserts that the weakness of LS's position as to the contract claim was noted in a Memorandum Opinion (Doc. 42) written by Magistrate Judge Caiazza, denying a Motion to Dismiss for Lack of Jurisdiction (Doc. 30 ) filed by Harris Watson and its principals.  One of the bases for this denial was a determination that those Defendants had created continuing relationships and obligations with citizens of Pennsylvania through "use of their contacts to negotiate the *alleged* coexistence agreement

A&E argues that L&S's conduct here is "remarkably similar" to the culpable conduct found in J & J Snack Foods, Corp. v. Earthgrains Co., No. 00-62230, 2003 WL 21051711 (D.N. J. May 9, 2003).   There, the plaintiff sought a preliminary injunction preventing the defendant's use of its mark.  Denying that request, the Court explained in detail the deficiencies in the plaintiff's case and the proof required to establish a viable infringement claim.  Id. at *2. Despite this guidance, the plaintiff opposed the motion for summary judgment without significantly adding to the evidence or modifying its argument.  The District Court granted summary judgment in favor of the defendant and granted its request for attorneys' fees under the Lanham Act.  The Court found that the plaintiff engaged in culpable conduct when it contested the motion for summary judgment motion without curing the defects in its case.

The facts in J & J Snack Foods are altogether distinguishable from those here.  Although this Court found that the record failed to support L&S's position  regarding the coexistence agreement,  its finding was not presaged by Magistrate Judge Caiazza.  Furthermore, the contract issues were not incontrovertibly one-sided.  This is illustrated by the fact that one member of the Court of Appeals panel reviewing the grant of summary judgment would have left all issues regarding contract formation to a jury.  See American Eagle, 2009 WL 2902250, at **11-16.   In light of this finding, the Court would be hard-pressed to characterize L&S's position as frivolous.  Moreover, the trademark infringement issues raised in L&S's counterclaims, apart from the

---

and, thereafter, to unilaterally modify material terms thereof." (Doc. 42 at 7) (emphasis added). AE contends that this language should have been "enough to educate L&S as to the defect in its position." (Doc. 258 at 10). When Judge Caiazza's language is considered in context, however, it is clear that he was not expressing an opinion on the merits of the contract claim.  The Record does not show that AE, before now, interpreted the Judge's statement as having resolved the contract issue.  Significantly, the statement was not cited it in the materials cited by AE in support of its Motion for Summary Judgment.

coexistence agreement, were no less meritorious at the time the counterclaims were filed than when they were raised in December 2005.  At that point, AE clearly thought that L&S's potential trademark claims were substantial enough to warrant AE's immediate participation in settlement talks directed at averting litigation.

To the extent that AE contends that L&S's actions during the discovery process qualify as culpable conduct, the Court disagrees.  Every one of the alleged instances of discovery abuse has been addressed and resolved.  Any argument that sanctions are warranted at this point is undercut by the fact that sanctions were either not sought or not awarded while the issues were current.

In rejecting AE's invitation to revisit the myriad battles waged during discovery, the Court finds it entirely appropriate to observe that at multiple points during this litigation, attorneys from both sides have evinced a marked lack of civility toward one another.  This is evident in the briefs filed here, and was uniquely apparent throughout discovery.  During that process, the Court was inundated with "emergency" motions, correspondence, and telephone calls which rapidly became so unreasonably burdensome, vitriolic, and disruptive as to warrant appointment of a Special Master to whom the stream of argument could be diverted.  In an exercise of preternatural patience, the Special Master issued no fewer than twenty-nine Reports and Recommendations over the four months of his service.  AE's attempt to paint L&S's conduct as culpable calls to mind the cliched pot and kettle.

In sum, the Court does not find L&S's conduct, in any single instance or in total, to have been culpable within the meaning of the Lanham Act.  Because a finding of culpability on the part of the non-prevailing party is essential to a determination that a case is "exceptional," the Court need not and will not engage in further analysis of the Lanham Act fee request.

B.    The Alternative Request for Sanctions and Fees Pursuant to Fed. R. Civ. P. 11

The Supreme Court has stated that "the central purpose of Rule 11 is to deter baseless

filings in district court . . . ."   Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  The

Rule:

> imposes a duty on attorneys to certify that they have conducted a
> reasonable inquiry and have determined that any papers filed with
> the court are well grounded in fact, legally tenable, and "not
> interposed for any improper purpose."  An attorney who signs the
> paper without such a substantial belief "shall" be penalized by "an
> appropriate sanction."  Such a sanction may, but need not include
> payment of the other parties' expenses.

(internal citations omitted).  AE summarizes the basis for its Rule 11 request as follows:

> [T]he record amply illustrates that L&S knew the coexistence
> agreement barred its trademark infringement claims and that it had
> no basis on which to assert infringement.  Had there been any
> doubt about this, it was resolved once Dennis Hall testified.  Rather
> than dismissing its claims then and there, L&S attempted to
> suppress the unequivocal evidence provided by Mr. Hall through a
> frivolous legal argument while continuing to press its claim of
> reverse trademark confusion knowing that it would not be able to
> prove its case.

(Doc. 258 at 18).  This argument is identical to the one advanced by AE in support of its Lanham

Act fee request.  For the same reasons that the Court denied that request, it will deny this one.  As

the Court has already discussed, it does not find L&S's decision to contest the coexistence

agreement or its decision to file trademark claims to have been unreasonable, vexatious, or

motivated by bad faith.[4]

_____

[4]Similarly, the Court declines to invoke its inherent equitable power to award attorneys' fees to a
losing party that has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Hall v. Cole,
412 U.S. 1, 15 (1973).

9

III.    <u>CONCLUSION</u>

For the reasons set out above, the Plaintiff's Motion (Doc. 250) will be denied.  An appropriate Order follows.

/s/ <i>Amy Reynolds Hay</i>
Chief United States Magistrate Judge

Dated: 21 September, 2009

cc:     Counsel of Record via CM/ECF